Gaston, Judge,
 

 after stating the case as above set forth, proceeded as follows:
 

 ^ *s manifest, we think, from an examination of the act of 1785, referred to in the answer, that the creditors thereby intended to be protected are the creditors of the husband, recited in the preamble is, that marriage settlements and other contracts constituting charges or incum-brances upon the estates of husbands — binding the estates hLls':)ancls” — have been made and kept secret, and that the “ possessors” upon the credit of the property not’ known to be encumbered, “ upon the credit of their apparent property have been enabled to contract debts to the deception and . . . r injury of their creditors. The creditors contemplated in the preamble are, exclusively and evidently, those of the husband. The enactment contained in the 1st section is not so explicit as taken
 
 per se,
 
 to leave no room for dispute, whether the creditors therein mentioned be those of the husband, or of the wife or both. It requires that all marriage settlements and contracts whereby any money or other estate shall be secured to the wife or husband, shall be registered within a prescribed time, “ or be void against creditors.” But when the
 
 *47
 
 section is regarded in connexion with the preamble, and the enactment in the second section, there is little room to douht whose creditors were here contemplated. The second section which directly bears upon the question before us — for the registration of the articles within the time prescribed by the first section, is not disputed, and if disputed is fully proved — points unequivocally at the creditors of the husband. “ For preventing injury to creditors,”it forbids that a greater amount shall be secured to the wife and the children of the marriage, than the portion received with the wife in marriage, and the net amount of the husband’s estate after deduction of
 
 his
 
 debts. The whole amount of
 
 her
 
 property— without any deduction for
 
 her
 
 debts — may be included in the settlement for her benefit, and that of the children ; but only the balance of
 
 his,
 
 after a deduction of a sum-sufficient to meet the demands against him. The injury guarded against is a subtraction of his property from his creditors, so as. not to leave enough for the satisfaction of their demands. The marriage articles therefore are not affected by the act of 1785, and not being impeached on any other grounJ, they are valid against the defendant.
 

 Upon the marriage the legal estate in the slaves whereof Mary Smith, was possessed, passed to her husband Purdy, subject to the trusts thereby declared, one of which trusts was for the appointees of his wife, if she should leave no issue of that marriage. The legal estate of Purdy having been transferred to the defendant, as a purchaser thereof at execution sale, it passed charged with that trust independently of the notice, which the defendant admits he had, thereof ; and the plaintiffs as appointees under the power reserved to Mrs. Purdy have a right to demand the execution of that trust against the defendant, unless the estate in his hands has been discharged therefrom, or he be protected against its assertion in whole or in part by the means alleged in his answer. It is contended in his behalf that although the judgment and execution ‘under which he first purchased w< re against Purdy only, yet as the judgment was because of a claim which the defendant had in rignl of his wif\ against the wife of Purdy before their intermarriage, the defendant has a right, in equity, to be satisfied in respect thereof by the pro
 
 *48
 
 perty secured to her, or over which she exercised her power of appointment. It is unnecessary to examine this alleged equity very particularly, because if it could be established, (of which we say nothing), there is no room for its application here. The defendant purchased under the qxeculion against Purdy
 
 his interest
 
 in the slaves at prices which with a small sum in money paid by Purdy himself, paid off this judgment, and left no part thereof unsatisfied. This appears distinctly from the return made upon the execution, which is referred to as a part of the defendant’s answer. Assuredly under
 
 that purchase
 
 he acquired no further or other rights than would have been acquired by a stranger to the execution, and a stranger by such a purchase wbuldhave acquired all Purdy’s interest — that is to say, the
 
 entire
 
 legal estate, but a beneficial interest only during his life. In this court the price would be regarded as paid for this beneficial interest — and in this court no f tr her interest passed by the sale. The defendant claims to have been both purchaser and creditor upon this execution. As purchaser under it he bought but Purdy’s life estate — as creditor his demand has been satisfied by the sale of that estate. He has enjoyed what he bought, and whether it has turned out more or less profitable than he anticipated — whether it was an advantageous or a losing bargain, it has been his profit or his loss, with which neither the plaintiffs nor any other persons but himself, have any concern. The court sees nothing in the claim set up by the defendant as a creditor or purchaser, in relation to the judgment .against Purdy, which in any way affects the right asserted by the plaintiffs. ■
 

 The
 
 *49
 
 power, takes no intere stin , lor of a writing in the nature of a will1 uncler a the prop(,r... vests wiih-Ifsen^huhc aPP°intee-
 

 
 *48
 
 The court is of opinion that the defendant acquired nothing by his alleged purchase under the execution against Lockhart as executor of Mrs. Purdy. One reason alone —although others are not wanting — will be given for this opinion. The negroes in question were not the property of Mrs. Purdy, which upon her death came to the hands of her executor — for which
 
 he
 
 was liable to be charged as assets— and which might be seized and sold on au execution as the goods of the testatrix in his hands; but they were property in the hands of her husband, over which she bad a contingent power of appointment. Had the power been exer*
 
 *49
 
 . . JDUt It IS a cised there would have been no pretext for holding them to ■be assets at all — -and the exercise of the power did not pass them as assets,
 
 into the hands of the executor. He
 
 could not claim against the will under which he set up all his authority. Upon the probate of the instrument called the ... , , , , , will, the estate thereby appointed passed directly to the plaintiffs — not through the executor, or by virtue of
 
 his
 
 assent —but as though they had been named as appointees in instrument creating the power of appointment, well established principle of,equity that where there is a general power of appointment, which it is absolutely at the pleasure of the donee of the power to execute-or not, he may appoint in favor of himself, or his executors if he pleases. therefore he executes it gratuitously to the neglect of the j.ust demands of creditors, the thing so appointed sha'll be considered, as to them, as a part of the estate, as assets.for the satisfaction of their demands. But how is this doctrine of equity carried into execution? not by annulling the appointment— or altering the disposition — but by holding the appointee a trustee for the creditors.
 
 Townsend
 
 v. Windham, 2 Ves. 1.
 
 Lafeelles
 
 v.
 
 Cornwallis,
 
 2 Ves. 465.
 
 Jenney
 
 v.
 
 Andrews,
 
 6
 
 Mad.
 
 264. The defendant in this case has established his claim as a creditor by reducing it to judgment. The plaintiffs' have in no way attempted to impeach it. There has been no satisfaction of it, in whole or in part; except by the purchase made by the defendant at the execution sale against Lockhart. The plaintiffs claim,, and in the judgment of the court, are entitled to the whole interest which was sold, or attempted to be sold under that execution, but that interest is in their hands chargeable with the debts of their mother. Claiming equity they ought to do equity. Our law recognizes as a legal obligation the liability of the defendant in execution to refund to the purchaser at sheriff’s sale the price applied towards the satisfaction of the judgment, if the purchaser be deprived of the property so bought — see
 
 Act
 
 1807,
 
 ch.
 
 723,
 
 Rev. Stat. ch.
 
 xlv.
 
 Sec.
 
 22. We think therefore that it is right to require in this ease that the plaintiffs shall not compel the surrender from the defendant, of the slaves in question, without satisfying the
 
 zateable part
 
 of the debt of
 
 *50
 
 their mother for which he obtained judgment against her executor.
 

 With respect to the claim which the defendant prefers, as constituting another charge upon the property, for the $1500 paid under the circumstances stated in his answer, to the sureties of Mrs. Purdy, there is more difficulty. But whether it can or cannot be established, it seems to us that upon the‘ present pleadings, and as between the present parties, the court has not a right to decide. If the claim be well founded, it is because the defendant is
 
 pro tanto
 
 subrogated to the sureties, whose losses he has in1 part discharged. .As a
 
 partial assignee
 
 he cannot proceed to subject this interest, without making his assignors parties. When made parties, they will be equally entitled with him to satisfaction out of this interest for that part of their loss which has not been remunerated. Until there has been some judgment or decree by which a priority is established, the plaintiffs are at liberty to pay any debts for which the estate is charged, and after paying the value of it they can be subjected no further. Under these circumstances the court deems it prudent to-decline passing upon this claim, and leave it open to the defendant to assert it in any other .mode of proceeding if he thinks proper, and be so advised.
 

 The defence set up under the acts of 1715 and-1820 is altogether untenable. The right of the plaintiffs to the enjoyment ’of the property for which they have filed this bill, did not accrue until the death of Purdy in 1832, and the bill was filed in 1833.
 

 There must be an account taken of the hire and profits of the negroes since the death of Purdy, allowing to the defendant the reasonable expenses aad charges of maintaining them —and also an account of the debt due from the late Mrs. Purdy to the defendant — and an inquiry what is the part thereof which the negroes of the plaintiffs should bear in proportion to the whole value of the slaves appointed — and the plaintiffs are to be declared entitled to the possession of the negroes, and the balance that may be found due to them on taking these accounts, if the balance be in their favor — or entitled to the possession of the negroes, or paying the bal-
 
 *51
 
 anee that may be found due against them, if on taking the accounts the balance be in favor of the defendant. Care will be taken in the decree to reserve to the'defendant the right of urging hereafter the claim on which the court has forborne to pass? '
 

 Per Curiam. Decree accordingly.